[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-14160

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

MATTHEW LEE OSTRANDER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 1:20-cr-00032-AW-GRJ-1

_____

Before ROSENBAUM, NEWSOM, and MARCUS, Circuit Judges.

MARCUS, Circuit Judge:

In August 2020, Matthew Ostrander -- a homeless fugitive -- was arrested in Gainesville, Florida for failing to register as a sex offender following a 2007 child pornography conviction. At the time of his arrest, Ostrander had in his possession four electronic devices (a laptop, a cell phone, and two USB thumb drives), three of which were found to contain a total of 480 computer-generated images ("CGI") of children involved in sexual activity. The images did not depict real children, nor were any real children involved in the making of the images. After a two-day trial in federal court, a jury found Ostrander guilty of knowing possession of an obscene visual depiction -- including a drawing or cartoon -- of a minor engaging in sexually explicit conduct in violation of 18 U.S.C. § 1466A(b)(1), (d)(4).

On appeal, Ostrander broadly raises three categories of challenges to his conviction: first, Ostrander challenges the constitutionality of the statute he was charged with violating on overbreadth and vagueness grounds; second, he says the evidence was insufficient to sustain his conviction; finally, he alleges prosecutorial misconduct.

We are unpersuaded by each of these arguments. First, the statute is not facially unconstitutional because it is neither overbroad nor vague. Ostrander has failed to establish that any potentially unconstitutional reach of the statute is substantial when compared to the statute's plainly legitimate sweep -- those who possess or transport obscene images of children outside the home. Nor

does the statute fail to comply with the notice requirements of the Due Process Clause.    Second, Ostrander's sufficiency-of-the-evidence claim fails.    On the record adduced at trial, a reasonable jury could find, as it did, Ostrander guilty beyond a reasonable doubt. Finally, Ostrander has neither established that any prosecutorial misconduct occurred, nor that any claimed misconduct would have undermined the jury's verdict.

We affirm.

## I.

On August 27, 2020, deputy United States Marshal Adam Myers received a tip that a fugitive, Matthew Ostrander, was living in Gainesville, Florida.    Specifically, Myers was told that Ostrander was accessing Facebook from an IP address in the Gainesville area. Myers determined that the IP address belonged to the Wi-Fi of a Publix supermarket in Gainesville and went to the Publix on September 2, 2020, to obtain video surveillance of the premises during the times that Ostrander's Facebook was being accessed.    While Myers was at the Publix reviewing the video surveillance, he was notified that Ostrander was again accessing Facebook from the Publix Wi-Fi at that very moment.    Myers switched to a live video feed, where he observed Ostrander using a laptop computer while eating at a coffee shop housed inside the supermarket.    After backup arrived, Myers approached Ostrander and placed him under arrest for failure to register as a sex offender.    Ostrander later told the officers that he was living in a campsite in an outdoor stairwell less than a mile from the Publix.

From the scene of Ostrander's arrest, detectives recovered a cell phone, a laptop computer, and two USB thumb drives. Digital forensic investigation of these devices discovered some 480 CGI depicting children involved in "different sex acts and different forms of abuse."

On December 21, 2021, a grand jury empaneled in the Northern District of Florida returned a Superseding Indictment charging Ostrander with the knowing possession of "a visual depiction of any kind, including a drawing and cartoon, that depicts a minor engaging in sexually explicit conduct, and is obscene," and that has a nexus to interstate commerce, in violation of 18 U.S.C. §§ 1466A(b)(1), (d)(4). The Superseding Indictment also charged Ostrander with failure to register as a sex offender in violation of the Sex Offender Registration and Notification Act, 18 U.S.C. § 2250(a), based on Ostrander's 2007 conviction for Possession of Child Pornography in the Eastern District of Missouri, in violation of 18 U.S.C. § 2252A(a)(5)(B). Ostrander pleaded guilty to the failure-to-register charge on May 10, 2022. Neither the failure-to-register charge nor Ostrander's guilty plea are at issue in this appeal.

On May 5, 2022, Ostrander moved the district court to dismiss the possession-of-a-visual-depiction charge, arguing that the statute was unconstitutional and that the district court lacked jurisdiction to hear the case. The court denied the motion, both because it was untimely and without merit.

A two-day jury trial commenced on May 11, 2022. Because Ostrander challenges the sufficiency of the evidence for his

conviction and alleges prosecutorial misconduct, we detail the events at his trial at some length.

The Government called four witnesses. First, the Government presented Adam Myers, the deputy United States Marshal who had located and arrested Ostrander. Myers told the jury how he had located Ostrander at the Publix in Gainesville, arrested him, and seized the phone, laptop, and two thumb drives. Myers also identified Ostrander in court. The Government also called Stephen Holmes, a United States Probation Officer based in St. Louis, Missouri. Holmes testified that he supervised Ostrander in 2014 pursuant to the 2007 conviction. Holmes identified Ostrander in court.

Third, the Government offered the testimony of Van Wilson, a computer forensic analyst for Homeland Security Investigations. Wilson had examined Ostrander's cell phone, laptop, and the two USB thumb drives. On the cell phone, Wilson said that he found an application (or "app") called Telegram, which is a messaging app that can be end-to-end encrypted. Wilson explained that when an operating system loads an image in an app, it will download a copy of that image into a "cache folder" on the device. This way, if the image is viewed again in the future, the operating system can show the user that image more quickly instead of redownloading it.

In the app's cache file, Wilson found two CGI that depicted "two little boys." Wilson explained that he manually searched the Telegram app and discovered a group chat where users were

sharing images back and forth, although he could not tell what the images depicted because they were blurred without an internet connection.[1]  The name of that group chat was "School of Shota ♥."

On the first USB thumb drive (the "Innostor USB"), Wilson testified that he found 480 CGI.[2]  The images depicted children, and were sorted into six folders, each of which was created by the user between July 30, 2020 and August 30, 2020.  The six folders were named: "Gocams," "Cuteness," "Tommy," "Webcam Boys," "Neighbor," and "Silver Fox."  Digital forensics indicated that the Innostor USB had last been modified by Ostrander's laptop on August 30, 2020.  Wilson also testified that he found web addresses ("URLs") on the cell phone that directly linked to online copies of some of the same images found on the Innostor USB.

Wilson explained that he was able to identify search terms used in the laptop's internet browser, which included "Gocams 3D," "Shota," "Webcam Boys," "Silver Fox," "Tommy," and "My Neighborhood."  Wilson said that he found five image files on Ostrander's laptop that had been downloaded from the internet.

Finally, the Government offered Anthony Lada, a special agent with Homeland Security Investigations.  Lada testified that he reviewed over 400 CGI located on the electronic devices found

---

[1] Wilson testified that the detectives kept the phone from connecting to the internet so it could not be remotely wiped.

[2] Wilson said that no CGI were found on the second thumb drive.

on Ostrander's person, many of which depicted juvenile children in "different sex acts and different forms of abuse." Lada also testified that he used an undercover computer to visit the URLs found on Ostrander's cell phone and discovered that they were linked to websites where the user could download CGI of children involved in sexual acts or sexual abuse. Lada said that some of the images on the websites were the same as the ones found on Ostrander's electronic devices.

Lada told the jury that he selected ten of the CGI found on Ostrander's devices to become exhibits at trial. The images Lada selected generally depicted male children being subjected to anal rape and sadistic sexual abuse. These ten images became Government exhibits 5A–5J. Each of these images was found on the Innostor USB unless otherwise noted:

1. Exhibit 5A was found in the "Cuteness" folder. The URL was also located.
2. Exhibit 5B was found in the "Gocams" folder. This image was also found on the laptop.
3. Exhibit 5C was found in the "Neighbor" folder.
4. Exhibit 5D was found in the "Neighbor" folder.
5. Exhibit 5E was found in the "Neighbor" folder. The URL was also located.
6. Exhibit 5F was found in the "Neighbor" folder.
7. Exhibit 5G was found in the "Silver Fox" folder. The URL was also located.
8. Exhibit 5H was found in the "Silver Fox" folder.
9. Exhibit 5I was found in the "Silver Fox" folder. The URL was also located.

    10.   Exhibit 5J was found on the phone and on the laptop.

The Government published the ten images.

      In an effort to establish that the ten images were really part of larger story sequences or works of art, on cross-examination, defense counsel showed Lada a sequence of images from the "Cuteness" folder and asked him whether the images related a "series of events that appear to take place in a confined time and convey a story[.]" Lada replied: "I am not attempting to provide any of my own context to any of the images I see." Defense counsel then showed Lada a sequence of images from the "Gocams" folder and again asked if they related a story. Lada replied: "I can't tell that. I don't see a timestamp or anything on the images. Maybe you can say that, subjectively. I can't -- I'm not going to provide my own context to the images."

      Defense counsel also showed Lada a sequence of images from the "Neighbor" folder. Lada said that the first image in the folder had words that said, "my neighborhood," but he did not "know if it's a title page." Lada confirmed that every file in the folder had the words "my neighborhood" in the file name. Pressing the point further, Counsel asked Lada whether he would "agree that some of the images were contained within a storyline depicting a sexual relationship between an adolescent and a grown male who was involved with the child's mother[.]" Lada responded: "I would say that there are images contained in this folder which show, or depict, sexual abuse of a child. I don't know anything about the story element that you are asking me about." Defense

counsel impeached Lada with a copy of Lada's report, which stated that "[s]ome of the images were contained within a story line depicting a sexual relationship between an adolescent and a grown male who was involved with the child's mother."

Lada also confirmed on cross-examination that the first image in the folder "Tommy" had a title, a part number, and then a "by" line.  Lada conceded that "[y]ou could call [those] elements that would be in a story, I guess," and acknowledged that the subsequent images had dialogue boxes and cartoon bubbles and appeared to convey "some sort of progression of events."  However, no images from the "Tommy" folder were shown to the jury.  Finally, defense counsel asked if the images in the folder "Webcam Boys" related to "a three-part story."  Lada replied, "I have no idea whether it's a three-part story, sir.  I'm sorry."

On redirect examination, counsel for the Government revisited the same theme, asking Lada whether some of the images the jury had seen appeared to be in a series.  Lada acknowledged that "[t]here appears to be some relation between the images," but he also said that "[t]here appear to be many other images that are just stand-alone."

Finally, the Government told the jury that the parties had stipulated that the electronic devices (the laptop, the cell phone, and the Innostor USB) were all manufactured outside of the state of Florida and are materials that have been shipped and transported in interstate and foreign commerce.

After the Government rested, Ostrander moved for a judgment of acquittal pursuant to Rule 29. Fed. R. Crim. P. 29. As part of this motion, Ostrander offered to call Richard Connor, Jr., a computer and digital forensics expert, to explain the larger context that the full 480 images provided for the ten images shown to the jury. Ostrander also raised the issue of prosecutorial misconduct. In essence, Ostrander argued that the Government failed to establish that the works were obscene when "taken as a whole," because the jury was not shown all 480 images, but rather saw only ten selected images. The court agreed to allow Ostrander to submit all 480 images as an exhibit for the jury, but denied the Rule 29 motion because, construing the evidence in the light most favorable to the Government, the Government had presented sufficient evidence for a reasonable jury to convict.

The defense then called Connor. Connor said that he had reviewed all 480 images. The court sustained an objection to Connor offering an opinion on whether the images were actually related or revealed a series of events. After the court ruled that Connor would not be allowed to offer the opinion that some of the images were in some way related to each other, Ostrander withdrew offering the 480 images. They were never shown to the jury.

At the close of the case, the defense renewed its Rule 29 motion. The court again denied it. The parties did not object to the jury instructions and, after less than thirty minutes of deliberation, the jury found Ostrander guilty.

The district court sentenced Ostrander to 168 months' imprisonment, followed by a term of three years of supervised release, and a special assessment in the amount of $200. The district court also sentenced Ostrander to 120 months' imprisonment for failure to register as a sex offender, to be served concurrently, followed by a life term of supervised release.

This timely appeal followed.

## II.

We start with Ostrander's challenge to the constitutionality of the statute. We review a challenge to the constitutionality of a statute *de novo*. *United States v. Dean*, 635 F.3d 1200, 1203 (11th Cir. 2011). The challenger bears the burden. *Id.*

Ostrander argues that § 1466A(b)(1) and (d)(4) is facially unconstitutional. First, he says that the statute is unconstitutionally overbroad because it violates the Supreme Court's command that the "mere private possession of obscene matter cannot constitutionally be made a crime." *Stanley v. Georgia*, 394 U.S. 557, 559 (1969). He also says that the statute is overbroad because it proscribes private drawings depicting a person's thoughts. Second, he contends that the statute is void for vagueness because the Supreme Court's test for obscenity, articulated in *Miller v. California*, 413 U.S. 15 (1973), does not provide adequate notice to a defendant who never intends to show his private works to anyone else. We address each argument in turn.

As a preliminary matter, however, the Government argues that the district court properly denied Ostrander's motion to

dismiss Count One of the Amended Indictment as untimely, inasmuch as it was filed just a week before trial and three months after the cut-off date for filing pre-trial motions.  We are not persuaded.  Had Ostrander filed a motion to dismiss under Federal Rule of Criminal Procedure 12(b)(3) -- which covers pretrial motions that must be made before trial -- he would have been obliged to file that motion before the pre-trial deadlines set by the district court.  *See United States v. Milian-Rodriguez*, 828 F.2d 679, 683 (11th Cir. 1987).  But Ostrander's motion to dismiss challenged the Superseding Indictment on the ground that the statute he was charged with violating is unconstitutional.[3]

In our Court, a constitutional challenge to the validity of the charging statute is jurisdictional in nature and, therefore, may be filed at any time while the case is pending.  *See* Fed. R. Crim. P. 12(b)(2) ("A motion that the court lacks jurisdiction may be made at any time while the case is pending."); *United States v. Saac*, 632 F.3d 1203, 1208 (11th Cir. 2011) ("The constitutionality of the [Act], the statute under which defendants were convicted, is a jurisdictional issue . . . ."); *United States v. Tomeny*, 144 F.3d 749, 751 (11th Cir. 1998) (holding that a claim that the statute under which the defendant was convicted was preempted by another statute "effectively claim[ed] that the indictment failed to charge a legitimate offense," which was a jurisdictional claim); *United States v. Scott*, 61

---

[3] Ostrander's motion to dismiss did mischaracterize the motion as a Rule 12(b)(3) motion, rather than a Rule 12(b)(2) motion, a mistake Ostrander attributes to copy-pasting.

F.4th 855, 859 (11th Cir. 2023). The district court erred in denying the motion to dismiss on the ground that it was untimely. However, it was right to deny the motion because it failed on the merits.

## A.

Ostrander's primary claim is that § 1466A(b)(1), (d)(4) of Title 18, which criminalizes the knowing possession of any visual depiction of a minor engaging in sexual activity that is obscene, is overbroad because it wrongly outlaws the mere private possession of obscene materials.[4] Ostrander is correct that the text of the statute proscribes some conduct that may be constitutionally protected. However, there is no question that the statute is not

---

[4] Specifically, § 1466A(b)(1) reads:

> Any person who, in a circumstance described in subsection (d), knowingly possesses a visual depiction of any kind, including a drawing, cartoon, sculpture, or painting, that-- (1)(A) depicts a minor engaging in sexually explicit conduct; and (B) is obscene . . . or attempts or conspires to do so, shall be subject to the penalties provided in section 2252A(b)(2), including the penalties provided for cases involving a prior conviction.

18 U.S.C. § 1466A(b)(1). Subsection (d)(4) of the statute explains that:

> The circumstance referred to in subsections (a) and (b) is that . . . any visual depiction involved in the offense has been mailed, or has been shipped or transported in interstate or foreign commerce by any means, including by computer, or was produced using materials that have been mailed, or that have been shipped or transported in interstate or foreign commerce by any means, including by computer.

*Id.* § 1466A(d)(4).

unconstitutional in all its applications, and Ostrander has not made the requisite showing that substantial overbreadth exists in fact, when compared to the statute's plainly legitimate sweep.

**1.**

To address Ostrander's argument, it is necessary to briefly review the development of Supreme Court precedent about the private possession of obscene material.

To begin, by now it is well-settled that obscene material is not protected by the First Amendment. *United States v. Bagnell*, 679 F.2d 826, 835 (11th Cir. 1982). In *Miller*, the Supreme Court established the governing test for what material counts as obscene and therefore unprotected speech. 413 U.S. at 24. Under *Miller*, material is obscene if: (a) "the average person, applying contemporary community standards would find that the work, taken as a whole, appeals to the prurient interest"; (b) the "work depicts or describes, in a patently offensive way, sexual conduct" as defined by the applicable law; and (c) "the work, taken as a whole, lacks serious literary, artistic, political, or scientific value." *Id.* (internal quotation marks omitted). If the material falls within the bounds of the *Miller* test, the government may constitutionally regulate or suppress it. *See Bagnell*, 679 F.2d at 835.

Ostrander's overbreadth argument is primarily based on *Stanley v. Georgia*, 394 U.S. 557 (1969), where the Court held that the "mere private possession of obscene matter cannot constitutionally be made a crime." *Id.* at 559. In *Stanley*, the Court acknowledged that "obscenity is not protected by the First Amendment,"

but distinguished its holding from prior cases on the ground that none of the Court's prior holdings "were made in the context of a statute punishing mere private possession of obscene material; the cases cited deal for the most part with use of the mails to distribute objectionable material or with some form of public distribution or dissemination." *Id.* at 560–61. Although the First Amendment recognizes "a valid governmental interest in dealing with the problem of obscenity," the Court explained, "the assertion of that interest cannot, in every context, be insulated from all constitutional protections." *Id.* at 563. "If the First Amendment means anything," the Court explained, "it means that a State has no business telling a man, sitting alone in his own house, what books he may read or what films he may watch." *Id.* at 565. Therefore, "the First and Fourteenth Amendments prohibit making mere private possession of obscene material a crime." *Id.* at 568.

The right articulated by *Stanley* is limited, however. For one thing, the Supreme Court has clarified that *Stanley* does not stand for a right to import, transport, or distribute obscene material, even if that material is intended only for private use in one's home. *See United States v. 12 200-Foot Reels of Super 8mm. Film*, 413 U.S. 123, 128 (1973); *United States v. Orito*, 413 U.S. 139, 141–42 (1973). For another, *Stanley* does not say that the First Amendment includes a right to possess child pornography, even in the privacy of one's home. In *Osborne v. Ohio*, 495 U.S. 103 (1990), the Court explained that the principle enunciated in *Stanley* could not overcome the State's overwhelming interest in protecting children from being used as subjects in pornographic materials, nor its interest in

encouraging those who possess the recordings to destroy them so that the "pornography's continued existence" could not "cause[] the child victims continuing harm by haunting the children in years to come." *Id.* at 109–11. Thus, the government "may constitutionally proscribe the possession and viewing of child pornography," even in the privacy of one's own home. *Id.* at 111.

In *Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002), however, the Supreme Court further clarified that the concerns articulated about the terrible harms associated with child pornography in *Osborne* did not apply to "virtual" child pornography -- that is, "explicit images that appear to depict minors but were produced without using any real children," including "by using computer imaging" to "create realistic images of children who do not exist." *Id.* at 239–40, 250. The Court explained that *Osborne* "anchored its holding in the concern for the participants, those whom it called the 'victims of child pornography.' It did not suggest that, absent this concern, other governmental interests would suffice." *Id.* at 250 (quoting *Osborne*, 495 U.S. at 110) (internal citations omitted). The Court held that a federal statute that criminalized the possession of virtual child pornography, regardless of whether it is obscene under *Miller*, violated the First Amendment. *Id.* at 256.

In sum, this is the law as it stands today: The First Amendment does not protect the distribution or transportation of obscene material, but the mere possession of obscene material in a private home cannot be criminalized. *Stanley*, 394 U.S. at 568; *Orito*, 413 U.S. at 141–42. *Stanley*'s holding, however, does not extend to

the possession of obscene material involving real children, because of the state's powerful interest in protecting children victimized by obscenity. *Osborne*, 495 U.S. at 111. But the reasoning of *Osborne* does not apply to virtual child pornography because there are no children victimized by these images. *Free Speech Coal.*, 535 U.S. at 250. The Court repeated that, in the absence of actual child victims, "the government 'cannot constitutionally premise legislation on the desirability of controlling a person's private thoughts.'" *Id.* at 253 (quoting *Stanley*, 394 U.S. at 566). Therefore, the First Amendment protects the private possession in one's own home of obscene material depicting *virtual* minors, so long as no real children are victimized. *Id.* at 256.

### 2.

We turn to the statute at hand. Section 1466A(b) criminalizes the knowing possession of "a visual depiction of any kind, including a drawing, cartoon, sculpture, or painting," that depicts a minor engaging in sexually explicit conduct and is obscene. 18 U.S.C. § 1466A(b). Ostrander argues that this statute is facially unconstitutional because it criminalizes the mere possession of obscene materials in a private home, in violation of *Stanley*.

There are two ways for a challenger to prove that a statute is facially unconstitutional. The first (and most common) method is that the challenger must "establish that no set of circumstances exists under which the law would be valid," or else show that the law lacks any "plainly legitimate sweep." *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 615 (2021) (alterations adopted) (citations

omitted).  Ostrander cannot make this showing, nor does he attempt to do so.  The statute covers plenty of valid circumstances, such transportation or possession outside the home of obscene material depicting children.

In the First Amendment context, however, the Court has recognized "a second type of facial challenge, whereby a law may be invalidated as overbroad if a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *United States v. Stevens*, 559 U.S. 460, 473 (2010) (internal quotation marks and citation omitted).  This is the type of challenge Ostrander raises.

"The Supreme Court describes facial invalidation for overbreadth as 'strong medicine' that 'has been employed by the Court sparingly and only as a last resort.'" *Dean*, 635 F.3d at 1204 (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973)).  Thus, any overbreadth "must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 799–800 (1984) (quoting *Broadrick*, 413 U.S. at 615).  Ostrander, in turn, has the burden to establish that the statute's purported overbreadth is both real and substantial.  *See Virginia v. Hicks*, 539 U.S. 113, 122 (2003).

Ostrander has not made either showing.  In order to establish that overbreadth is real, he "bears the burden of demonstrating, 'from the text of [the law] *and from actual fact*,' that substantial overbreadth exists." *Id.* (emphasis added) (quoting *N.Y. State Club Ass'n. v. City of N.Y*, 487 U.S. 1, 14 (1988)).  In other words,

Ostrander must show a "realistic danger" that the statute will, in a significant way, unconstitutionally burden parties not before the court. *Taxpayers for Vincent*, 466 U.S. at 801. Although Ostrander speculates about the potentially unconstitutional reach of this statute, he has not shown any realistic danger in fact. For one thing, Ostrander suggests that the statute could cover a person's private "doodle[s], draw[ing], caricature," or sculpture. Ostrander also offers that the statute might conceivably cover a hand-drawn or private digital comic strip. Although Ostrander is right that these situations could conceivably be covered by the text of the law, he has not demonstrated any realistic indication that the statute would actually be used to prosecute someone simply for making an obscene doodle in the confines of his own bedroom, in his home. In other words, even if Ostrander has established overbreadth "from the text of [the law]," he has failed to do so in "actual fact," and he has not come close to meeting his burden of proving a realistic danger that the statute will unconstitutionally burden parties not before the court. *Hicks*, 539 U.S. at 122 (citation omitted); *see also Taxpayers for Vincent*, 466 U.S. at 801.

The other examples that Ostrander has offered fare no better. Ostrander claims that the statute could burden an incomplete work-in-progress after it becomes obscene, but before it has attained any social value (and is therefore no longer obscene). Thus, Ostrander speculates, an artist could be prosecuted for a work-in-progress where the representation is "intended to look like young adults in a story of great social value," but which is temporarily obscene and the representations look like minors. But the realistic

danger of this happening seems to us to be remote.  The authorities in Ostrander's hypothetical case would need to obtain a warrant to seize a piece of art during the brief window between its conceptualization and the point when it achieves any artistic merit.  "[S]peculation about possible [unconstitutionality] in hypothetical situations not before the Court will not support a facial attack on a statute when it is surely valid 'in the vast majority of its intended applications.'"  *Hill v. Colorado*, 530 U.S. 703, 733 (2000) (quoting *United States v. Raines*, 362 U.S. 17, 23 (1960)).  Ostrander has pointed us to no case with a fact pattern even remotely like this and we are aware of none.

Moreover, even if Ostrander had made a showing of real danger, he would also need to establish that this danger was "*substantial*, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep."  *United States v. Williams*, 553 U.S. 285, 292 (2008).  The Supreme Court has "vigorously enforced" this requirement too.  *Id.*  But again, although Ostrander has offered a handful of hypotheticals, the "mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge."  *Id.* at 303 (quoting *Taxpayers for Vincent*, 466 U.S. at 800).

The legitimate sweep of this statute is not targeting obscene doodles and legitimate works of art in progress.  Instead, the legitimate sweep targets defendants like Ostrander: those who do not merely possess the covered obscenity in the privacy of their homes, but who are downloading or exchanging hundreds of such images

on the internet. *See, e.g.*, *United States v. Mason*, No. 3:17-CR-26, 2023 WL 6304385, at *1 (W.D. Pa. July 5, 2023) (defendant downloaded "hundreds" of images); *United States v. Taylor*, No. ACM 38700, 2016 WL 787245, at *1–2 (A.F. Ct. Crim. App. Feb. 25, 2016), *aff'd*, 76 M.J. 126 (C.A.A.F. Feb. 13, 2017) (defendant living in military dormitory downloaded numerous images from "several websites"); *Bowersox*, 72 M.J. at 72–73 (defendant living in shared military barracks downloaded over 300 anime-style images of minors from a website); *United States v. Jenkins*, 712 F.3d 209, 211 (5th Cir. 2013) (defendant downloaded over 100 virtual and actual child pornography images and videos); *United States v. Sotelo*, No. ARMY 20110267, 2012 WL 6021437, at *1 (A. Ct. Crim. App. Nov. 28, 2012) (defendant downloaded nearly 300 images and videos of actual and virtual child pornography). *But see United States v. Farrar*, 876 F.3d 702, 705 (5th Cir. 2017) (defendant inmate possessed "seven hand-drawn images depicting the [sexual] exploitation of minor females"); *United States v. Handley*, 564 F. Supp. 2d 996, 999 (S.D. Iowa 2008) (defendant possessed imported "anime comic books" in his home).

To this point, the fact that Ostrander "has not satisfied his burden of proof and failed to adduce plausible examples is unsurprising." *Dean*, 635 F.3d at 1206. The right articulated in *Stanley* is emphatically limited. *United States v. Miller*, 776 F.2d 978, 981 (11th Cir. 1985). Since there is no right to distribute or transport obscene material, it is difficult to imagine a large number of cases in which a defendant violates § 1466A(b)(1) but did no more than merely possess the obscene material, much less establish that these

circumstances exist in fact and are substantial in number both absolutely and relative to the statute's legitimate sweep.  In other words, "[t]he window" of protected behavior that overlaps with the conduct prohibited by the statute is "narrow." *Dean*, 635 F.3d at 1207.  We are confident that "these arguably impermissible applications of the statute amount to [no] more than a tiny fraction of the materials within the statute's reach." *New York v. Ferber*, 458 U.S. 747, 773 (1982).  And in these circumstances, "whatever overbreadth may exist should be cured through case-by-case analysis of the fact situations to which [the statute's] sanctions, assertedly, may not be applied." *Broadrick*, 413 U.S. at 615–16.

Moving beyond the ambit of *Stanley*, Ostrander claims that the statute is also overbroad because it prohibits the creation of private obscene drawings where the artist has no intention of showing the drawings to anyone.  But that argument necessarily fails. Again, overbreadth only applies if the statute "reaches a substantial amount of constitutionally protected conduct." *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 494 (1982).  But -- with the sole exception of *Stanley* -- obscene material is not protected by the First Amendment, *see Miller*, 413 U.S. at 23, and § 1466A(b) only covers images that are "obscene" and, by definition, are not constitutionally protected, 18 U.S.C. § 1466A(b)(1)(B); *see Hamling v. United States*, 418 U.S. 87, 118–19 (1974) (noting that the word "obscene" is a legal term of art incorporating the associated jurisprudence).

Ostrander's rebuttal is unconvincing. Ostrander cites generally to *Stanley* and *Griswold v. Connecticut*, 381 U.S. 479 (1965), in support of the undisputed proposition that the Constitution protects "freedom of thought." But there is no dispute that Ostrander is free to think what he likes. What Ostrander has failed to cite is any case that bridges the leap from constitutionally protected obscene thoughts to protection for the possession outside the home of obscene materials involving children.

Ostrander also cites to *Free Speech Coalition* for the proposition that the statute improperly "proscribes the visual depiction of an idea." But in *Free Speech Coalition*, the Court was concerned that the statute at issue "prohibit[ed] speech despite its serious literary, artistic, political, or scientific value." *Free Speech Coal.*, 535 U.S. at 246. The issue in *Free Speech Coalition* was that the statute prohibited visual depictions that were not, by definition, obscene. *See id.* at 246–47. Here, the statute only covers obscenity, so there is no such concern. *See United States v. Buie*, 946 F.3d 443, 445–46 (8th Cir. 2019) (rejecting an overbreadth challenge to 18 U.S.C. § 1466A(b)(1) for the same reason).

"[T]he overbreadth challenge must fail." *Vill. of Hoffman*, 455 U.S. at 494.

## B.

Ostrander next argues that the statute is facially unconstitutional because the *Miller* test itself is unconstitutionally vague when applied to a person's private works or library. "[T]he void-for-vagueness doctrine requires that a penal statute define the criminal

offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983).

As we have already observed, *Miller* held that a trier of fact determining whether a work is obscene must consider:

> (a) whether the average person, applying contemporary community standards would find that the work, taken as a whole, appeals to the prurient interest; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.

*Miller*, 413 U.S. at 24 (internal quotation marks and citations omitted). Ostrander says that this standard is unworkably vague when the artist never intends to show the work to anyone, because the only intended audience is the person who is applying the standard.

But *Miller* is clear in positing that the essential question is not who the intended audience is, but what the "average person, applying contemporary community standards," would think. *Id.*; *see also Hamling*, 418 U.S. at 104–05. The fact that an artist does not intend to show the work in his community does not alter the *Miller* test in any way. *Cf. United States v. Little*, 365 F. App'x 159, 163–64 (11th Cir. 2010) (holding in an unpublished case that the jury must judge obscenity based on how the average person in the local community would view the material, even where the material was

disseminated nationally on the internet rather than in the local community).  And the Supreme Court has repeatedly held that *Miller* is not vague.  *See, e.g., Hamling*, 418 U.S. at 116 (holding that statute incorporating *Miller* is not unconstitutionally vague); *Smith v. United States*, 431 U.S. 291, 308–09 (1977) (same); *Reno v. ACLU*, 521 U.S. 844, 873 (1997) (explaining that the *Miller* test is not vague because each of its prongs "critically limit[] the uncertain sweep of the obscenity definition").

Moreover, the Supreme Court has foreclosed Ostrander's argument that the *Miller* test is too vague to allow an individual to judge for himself the artistic value (or lack thereof) of his work.  In *Smith v. United States*, 431 U.S. 291 (1977), the Supreme Court clearly held that "the type of conduct covered by [an obscenity statute] can be ascertained with sufficient ease to avoid due process pitfalls" and that "the possibility that different juries might reach different conclusions as to the same material does not render [a statute incorporating *Miller*] unconstitutional."  *Id.* at 309; *see also Hamling*, 418 U.S. at 114–15 ("That there may be marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls is no sufficient reason to hold the language too ambiguous to define a criminal offense." (quoting *Miller*, 413 U.S. at 28 n.10)).

In the alternative, Ostrander argues that, because the Government and the district court had one interpretation of what the Government must prove at trial, and he had another, the statute "obviously" must be "unconstitutionally ambiguous and vague."

But, despite Ostrander's characterization, he does not genuinely offer an alternative reading of the statute or the *Miller* test, but rather disagrees with the district court's ruling on his specific sufficiency-of-the-evidence challenge, which we review below.

We reject Ostrander's claim that the statute is void for vagueness when applied to a person's private works maintained in his home.

## III.

Ostrander also challenges the sufficiency of the evidence at his trial. We review a challenge to the sufficiency of evidence *de novo*. *United States v. Capers*, 708 F.3d 1286, 1296 (11th Cir. 2013). We consider all of the evidence "in the light most favorable to the Government, and draw[] all reasonable inferences and credibility choices in the Government's favor." *Id.* "Evidence is sufficient to support a conviction if 'a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt.'" *United States v. Maxwell*, 579 F.3d 1282, 1299 (11th Cir. 2009) (quoting *United States v. Calhoon*, 97 F.3d 518, 523 (11th Cir. 1996)). In different words, "[t]he verdict must stand . . . 'unless no trier of fact could have found guilt beyond a reasonable doubt.'" *United States v. Calderon*, 127 F.3d 1314, 1324 (11th Cir. 1997) (quoting *United States v. Battle*, 892 F.2d 992, 998 (11th Cir. 1990)). "[A]ny reasonable construction of the evidence" that "would have allowed the jury to find the defendant guilty beyond a reasonable doubt" is sufficient to meet this standard. *United States v. Herrera*, 931 F.2d 761, 762 (11th Cir. 1991).

Broken down to the basic elements of this crime, the Government had the burden to prove that: (1) Ostrander knowingly possessed a visual depiction of any kind; (2) Ostrander knew the visual depiction depicted a minor engaging in sexually explicit conduct; (3) the visual depiction was obscene; and (4) the visual depiction was either (a) mailed or shipped or transported in foreign or interstate commerce by any means, or (b) produced using materials that had been mailed or shipped or transported in interstate or foreign commerce by any means. 18 U.S.C. § 1466A(b)(1). Reviewing the evidence presented in the light most favorable to the Government (as we must), we conclude that a reasonable jury could find that the evidence established Ostrander's guilt beyond a reasonable doubt.

First, the jury heard testimony that these images were found on at least three electronic devices in Ostrander's possession when he was arrested in the Publix café. The jury reasonably could find that Ostrander knowingly possessed these images, easily satisfying the first element.

Second, the jury heard sufficient evidence from which it could readily infer that Ostrander knew the images in his possession depicted a minor engaging in sexually explicit conduct. Lada testified at trial that the images were found on multiple electronic devices found in Ostrander's possession. Wilson testified that some of the images were found in the cache files of the Telegram app on Ostrander's phone, associated with an account using Ostrander's phone number and password. Wilson also told the jury

that URLs found in the web browser on Ostrander's cell phone were linked directly to images identical to those found on the Innostor USB. The jury also learned that the laptop -- which was password protected and, notably, associated with Ostrander's name -- had search terms identical to the folder names found on the Innostor USB. Wilson also testified that the folders on the Innostor USB had last been modified from Ostrander's laptop. Finally, the jury was presented with evidence that Ostrander had been previously convicted of possession of child pornography. Taking all of this in concert and in a light most favorable to the Government, a reasonable jury could find that Ostrander knew what these images depicted.

Skipping ahead to the fourth element, the parties stipulated to the jury (and we must accept) that the electronic devices were all manufactured outside the state of Florida and were materials that had been shipped and transported in interstate and foreign commerce.

That leaves us with only the third element: whether the images were indeed obscene. Again, the term "obscenity" in the statute incorporates the *Miller* test. Ostrander's argument is essentially that the jury viewed ten images in all, but that nine of the images (Exhibits 5A through 5I) were, allegedly, taken out of context from larger series of images, which included text, dialogue bubbles, title pages, etc. Ostrander says that, when the Government showed these images to the jury without also presenting the larger context of the series each image belonged to, the jury could not have found

that "the work, *taken as a whole,* appeals to the prurient interest" or that "the work, *taken as a whole*, lacks serious literary, artistic, political, or scientific value." *Miller*, 413 U.S. at 24 (emphasis added). Therefore, Ostrander reasons, no reasonable jury could have found that the images were obscene because the Government did not meet its burden by giving the jury the opportunity to consider the alleged "works" as a whole.  The Government responds that the jury heard testimony that the images were "discrete, distinct, individual, and hence, not related in the sense of a broader work, and, at a minimum, a reasonable jury could have found that to be the case."

This raises what sometimes is a difficult question: are separate, individually named (and individually copiable or movable) image files that nevertheless appear together in the same computer folder and appear to be related considered to be separate works? Or are they scenes that must be considered as part of a work "as a whole" that the factfinder must consider in their full context?  *Cf. Kois v. Wisconsin*, 408 U.S. 229, 231–32 (1972) (holding that "Sex Poem," an "undisguisedly frank, play-by-play account of the author's recollection of sexual intercourse," must nevertheless be considered by the factfinder in "the context" of ten other poems published alongside it in the same newspaper).

The Government says that there was no evidence "that the 480 images were part of a single story."  But this misapprehends Ostrander's argument.  Ostrander at no point alleged that all 480 images were part of a single work.  Rather, Ostrander claims that

nine of the images shown to the jury were taken from five separate series of images (or, as he characterizes them, "works"). And if Ostrander were right that each of these series of separate image files should have been taken together and measured as a "work," then he may be right that the jury should have had the opportunity to consider each image in the context of its respective work "taken as a whole." *Miller*, 413 U.S. at 24 (citing *Kois*, 408 U.S. at 230); *see also Free Speech Coal.*, 535 U.S. at 248 ("Under *Miller*, the First Amendment requires that redeeming value be judged by considering the work as a whole. Where the scene is part of the narrative, the work itself does not for this reason become obscene, even though the scene in isolation might be offensive."); *United States v. Deason*, 965 F.3d 1252, 1262–63 (11th Cir. 2020) (clarifying that the jury need not view the entire work, so long as "the matter is placed in context" so that no context is "lost because only select portions are viewed").

But we need not resolve this issue today. Ostrander concedes that Exhibit 5J is "a single, stand-alone image that has no broader context." It was not part of any series, nor was it drawn from some larger work or story. Thus, in viewing Exhibit 5J, the jury indisputably viewed the work as a whole. Exhibit 5J is a cartoon style drawing of what appears to be an adult male engaging in anal sexual intercourse with a child in a school classroom. A jury could reasonably find that Exhibit 5J is obscene. The evidence was sufficient to convict Ostrander.

Ostrander's sole answer is based on misreading the statutory scheme. Ostrander says that, by definition, Exhibit 5J does not fall within the ambit of § 1466A because it does not satisfy the statute's definition of "sexually explicit conduct."

Ostrander raises this challenge to his conviction for the first time on appeal, so we review it only for plain error. *United States v. Reed*, 941 F.3d 1018, 1020 (11th Cir. 2019). We may find plain error only where "(1) there is an error; (2) that is plain or obvious; (3) affecting the defendant's substantial rights in that it was prejudicial and not harmless; and (4) that seriously affects the fairness, integrity or public reputation of the judicial proceedings." *United States v. Hall*, 314 F.3d 565, 566 (11th Cir. 2002); *see also United States v. Rodriguez*, 398 F.3d 1291, 1298 (11th Cir. 2005). "The Supreme Court has instructed us that plain error review should be exercised sparingly, and only in those circumstances in which a miscarriage of justice would otherwise result." *Rodriguez*, 398 F.3d at 1298 (internal quotation marks and citations omitted). Ostrander carries the "difficult" burden of establishing each of the four prongs. *Greer v. United States*, 593 U.S. 503, 508 (2021) (quoting *Puckett v. United States*, 556 U.S. 129, 135 (2009)). Ostrander fails to meet the burden of establishing even the first two prongs because he has failed to establish any error at all, let alone one that is plain or obvious.

Ostrander begins his argument with a citation to § 2256, which lists the general definitions for the chapter. This section says that, when defining "child pornography," the definition of "sexually explicit conduct" found in § 2256(2)(A) should be used for

images of real or identifiable minors, but that the definition of "sexually explicit conduct" found in § 2256(2)(B) should be used for virtual images not involving real minors. 18 U.S.C. § 2256(8). Ostrander reasons that because Exhibit 5J is a virtual image, the definition of "sexually explicit conduct" must be the one found in § 2256(2)(B), which -- unlike § 2256(2)(A) -- requires that sexual intercourse be "graphic" in order to count as sexually explicit conduct, and sexually explicit conduct is "graphic" under § 1466A(f)(3) only if "a viewer can observe any part of the genitals or pubic area" while "the sexually explicit conduct is being depicted." Ostrander adds that Exhibit 5J does not depict any genitals or pubic area, and so the image cannot fall under the statute.

But Ostrander misreads the statute by beginning his analysis with the chapter-wide definition of "child pornography" found in § 2256(8). The statutory scheme is properly read by beginning with the specific statute Ostrander was charged with violating: § 1466A. And under § 1466A(f), the term "sexually explicit conduct" for the purposes of this section -- which does not mention "child pornography" -- "has the meaning given the term in section 2256(2)(A) *or* 2256(2)(B)." That is, either of the definitions found in § 2256(2) satisfies the statute Ostrander was charged with violating. And -- unlike § 2256(2)(B) -- under § 2256(2)(A), sexually explicit conduct includes "sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex." *Id*. § 2256(2)(A)(i). There is no "graphic" requirement. Exhibit 5J meets this definition easily. Ostrander has not established plain error, nor has Ostrander shown that his

substantial rights were affected or, finally, that the fairness and integrity of these proceedings can seriously be called into question.

In short, a reasonable jury could have found Ostrander's guilt beyond a reasonable doubt. His sufficiency challenge fails.

## IV.

Finally, Ostrander alleges prosecutorial misconduct. This allegation is also unconvincing.

"[D]ue process is violated when the prosecutor obtains a conviction with the aid of false evidence which it knows to be false and allows to go uncorrected." *United States v. Barham*, 595 F.2d 231, 241 (5th Cir. 1979).[5] "It is immaterial whether or not the prosecution consciously solicited the false evidence." *Id.* "To establish prosecutorial misconduct for the use of false testimony, a defendant must show the prosecutor knowingly used perjured testimony, or failed to correct what he subsequently learned was false testimony, and that the falsehood was material." *United States v. McNair*, 605 F.3d 1152, 1208 (11th Cir. 2010). The materiality element is satisfied "if there is a reasonable likelihood the false testimony could have affected the judgment of the jury." *Id.*

Ostrander raises two points suggesting misconduct. First, Ostrander says that, at a pre-trial hearing regarding his motion to compel production, the "government argued that the images are

---

[5] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all Fifth Circuit decisions issued before October 1, 1981.

'virtually indistinguishable from real children,['] inducing the district court to find that they were indistinguishable.'" But the district court was not "induced" to find that the images were virtually indistinguishable or anything else. The Government represented that the images were indistinguishable, and the court then stated that "if you want me to make a finding . . . you will have to provide [the images] to me." The district court viewed the images, and found that "[t]hey do appear to be computer images, but . . . I do find they are indistinguishable. They look like [what] they would have been if they were actual photos. They would have been somewhat glossed over, or something like that, but that's the finding I make." The Government did not solicit false testimony or let perjured testimony stand uncorrected. Rather, the Government merely made a representation to the district court and then the district court independently did what trial judges should do: examine the images and decide the matter for himself.

We review the district court's findings of fact, of course, only for clear error. *United States v. Kennedy*, 201 F.3d 1324, 1329 (11th Cir. 2000). But even if we were to assume arguendo that the district court's determination that the images were "virtually indistinguishable" from real children was clearly erroneous, Ostrander has not made any showing or even offered the argument that this claimed error was material. The district court's finding that the images were "virtually indistinguishable" was not an element of the statute Ostrander was charged with; the jury never heard the district court's determination; and both Ostrander's counsel and his expert witness at trial were given access to the full 480 images.

Moreover, at sentencing, the district court found that the definition of child pornography (which for sentencing included images that were virtually indistinguishable from real children) did not apply, and therefore no sentencing enhancement was made for the number of images in Ostrander's possession. *See* U.S. Sent'g Guidelines Manual § 2G2.2(b)(7). Ostrander cannot even claim that the court's initial finding that the images were virtually indistinguishable from real children had any bearing on his sentence.

Second, Ostrander argues that the prosecution engaged in misconduct when its witness Lada "denied, dissembled and obfuscated the fact that nine of the images he reproduced were taken from stories and three were taken from groups of related images." For starters, as we see it, Lada's testimony was not perjurious. It is true that, on cross-examination, Lada maintained that he was "not attempting to provide any of [his] own context to any of the images" he saw, although he conceded that the images "subjectively" could be said to relate a story. He also conceded that some of the images contained "elements that would be in a story," and further acknowledged that some of the images had dialogue boxes or cartoon bubbles and appeared to be "some sort of progression of events."

It is also true that Lada said that he didn't know anything about a story related to the "my neighborhood" images, after which defense counsel impeached him with a copy of his report, which said that "some of the images were contained within a story-line depicting a sexual relationship between an adolescent and a

grown male who was involved with the child's mother." But impeachment with a prior inconsistent statement goes to Lada's credibility; it does not necessarily establish prosecutorial misconduct. *See McNair*, 605 F.3d at 1208 ("[A] prior statement that is merely inconsistent with a government witness's testimony is insufficient to establish prosecutorial misconduct."); *Hays v. Alabama*, 85 F.3d 1492, 1499 (11th Cir. 1996) (determining there was no due process violation where "there has been no showing that [the witness's] later, rather than earlier, testimony was false").

Moreover, in order to establish prosecutorial misconduct, the Government must have either used the allegedly perjurious testimony or failed to correct it. Even if we assume that Lada's testimony was perjured -- and we don't -- the Government corrected it. On redirect examination, the Government asked the question this way: "Just some of the images that the jury has seen, do they appear to be in a series?" Lada replied: "Yeah. There appears to be some relation between the images."

Finally, even if the Government had failed to correct the allegedly perjured testimony -- which it did correct -- Ostrander would also need to show that the falsehood was material. *United States v. Dickerson*, 248 F.3d 1036, 1041 (11th Cir. 2001). Again, to establish materiality, Ostrander had to demonstrate that the false testimony "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Id.* (quoting *Strickler v. Greene*, 527 U.S. 263, 290 (1999)). And as we have explained, even if Exhibits 5A through 5I were indisputably

part of a larger context that was not shown to the jury, the jury still reasonably could have convicted Ostrander based on Exhibit 5J alone, and Ostrander has conceded that Exhibit 5J was a stand-alone image not involved in any story or larger context. Therefore, even if we were to accept Ostrander's misconduct claims (and we don't), the violations could not be said to have "undermine[d] confidence in the verdict." *Id.* at 1042.

We affirm.

**AFFIRMED.**